is 20-1045 Schmitz v. Colorado State Patrol. Everyone not arguing the first case, if you would please now mute yourselves and take yourselves off camera. Arguing Council, prepare to argue. All right, Council, we're ready to hear you on Schmitz v. Colorado State Patrol. Thank you, your honors. Maritza Dominguez-Braswell, Deputy Attorney General at the Colorado Attorney General's Office on behalf of the state defendants in this case. I've organized my remarks into three parts today. First, I'd like to explain why this court has jurisdiction under federal law to hear this appeal. Second, I'll explain why the Colorado State Patrol, as a public entity rather than a public employee, should be dismissed from the case because the claim against the entity is legally impossible. And third, I'll address the claim that plaintiff has brought against state trooper Ben Evans under the Colorado Governmental Immunity Act and explain why the district court does not have subject matter jurisdiction to hear the claim. So beginning first with this court's appellate jurisdiction, this court has jurisdiction under Aspen Orthopedics. Under Aspen Orthopedics, the court has subject matter jurisdiction to hear appeals from orders denying motions to dismiss where those motions are based on immunity from suit. And that's exactly what we have here. Like in Aspen, we are appealing the district court's order denying our motion to dismiss based on Now, it used to be under Colorado law and specifically under a case called City of Lakewood versus Brace that Colorado drew a distinction between sovereign immunity from suit, qualified immunity from liability, but that is not the case any longer. Under the Estate v. Bleck case, which we've cited in several places in our briefing, the court overturned the Brace decision and abrogated that distinction. And so under the Estate v. Bleck case, public employees like public entities enjoy sovereign immunity and have the right to an early determination of immunity, and in particular, an early determination of whether or not the conduct is willful and wanton for purposes of subject matter jurisdiction. Now, plaintiff relies on the case of Ceballos for the very broad proposition that this court is without jurisdiction to analyze willful and for that proposition. Ceballos simply affirms the applicable law under Aspen Orthopaedics and then simply holds that in that particular case, the appellant didn't satisfy his burden of establishing this court's jurisdiction. And that's because in that case, the appellant insisted that the jurisdiction came under state law, under the CGIA, and that is not what we contend here. As I noted, we contend that this court has jurisdiction under federal law. I'd like to move on to the claim against the Colorado State Patrol. And I'll be brief here because this is fairly straightforward. The claim against the Colorado State Patrol is legally impossible because under Colorado law, a claim for willful and wanton conduct cannot form the basis of a claim against a public entity. It can form the basis of a claim against a public employee but not an entity. Now, the district court here allowed that vicarious liability claim to go versus Arapahoe County Sheriff, which the court cited at page 13 of its order. But that case expressly decided, was expressly decided, quote, by operation of the statutorily imposed respondeat superior liability against the sheriff. That statutory liability is specific to county sheriffs and does not apply in this case. So again, a pretty straightforward legal issue. We ask that this court dismiss the case against the Colorado State Patrol. Now, I'd like to focus the rest of my, Judge Phillips, did you have a question? No. I'd like to focus the rest of my remarks on the claim against Trooper Evans. Now, this is the key question that we presented with respect to Trooper Evans in our statement of the issues. Did the district court err by concluding Mr. Schmidt's established subject matter jurisdiction as to the tort claim against Trooper Evans for willful and wanton conduct? And we contend the court erred for two reasons. First, the district court failed to hold plaintiff to a proof standard. And second, the court failed to apply the specificity requirement to the complaint. Now, I'm going to address the proof requirement first. This is a well-settled requirement under Colorado law, which applies here. Under the CGIA, a public employee acting within the scope of his or her employment is immune from tort liability unless the conduct was willful and wanton. And determining whether conduct is willful and wanton is a jurisdictional prerequisite under Colorado law. A claim can't go forward until the court is satisfied that it has subject matter jurisdiction. And Justice Ide explained that requirement at length in the estate of Bleck case. This is what she held there. Quote, the trial court erred in simply determining that Bleck had adequately pled that Martinez's conduct was willful and wanton. Instead, the trial court should have determined all issues relating to Martinez's immunity claim, including factual issues. End quote. Now here, the district court committed the exact same error that Justice Ide had to correct in the estate of Bleck. Is this case at the fact-binding stage, counsel? It is not, Your Honor. What's the pleading state of this case? Your Honor, this was a 12-B-1 motion to dismiss. The case has been pled, and again, we contend that the plaintiff erred on two fronts and the district court erred on two fronts. One second. Properly. If it's at the 12-B stage, we look only at the complaint, correct? Your Honor, it's at the 12-B-1 stage. What record is there for us to review other than the complaint? There is no record to review the way you might have, for example, on a summary judgment motion. And therefore, back to Justice Ide's case, there can be no fact-finding here. We have to just look at the complaint and see facially if there are enough facts. Okay. And we don't have a record. You're shaking your head. What are we supposed to review? Your Honor, Justice Ide's decision was on a 12-B-1 motion, and that was the important distinction I wanted to draw. It is not 12-B stage. It is a 12-B-1 argument and issue. And on a 12-B-1 motion, the court has to consider all facts. And if there are not enough facts to make a determination, the court can order a hearing. In fact, in the estate of Black... Your Honor, back to my question. The facts that are for us to review are in the complaint. You told us there's no other facts in the record. This is not a summary judgment case, nor is it a case on the merits. So other than the complaint, what is there for us to review? Well, one important piece of information here is plaintiff's characterization of evidence. Even though it's not technically in the record because plaintiff didn't attach it to the complaint, plaintiff describes the video footage in the dash cam. And this is really important because when plaintiff describes that video... Well, counsel, counsel, the video footage isn't mentioned in the complaint, correct? You know, Your Honor, I can't remember if it was mentioned in... It might have been referenced in passing. It certainly wasn't described. When plaintiff described it, it was in response to our motion to dismiss. All right. And the district court didn't rely on it either, did it? The court did not rely on the dash cam. Then why are we talking about the dash cam? Because plaintiff has made an admission that the conduct here was thorough. And that is exactly the opposite. Well, counsel, if the district court didn't rely on it and we're at 12B1, I'm back with Judge Lucero. Aren't we just looking at the complaint and it was sufficient to establish a jurisdiction here? We contend that the complaint is not sufficient to establish jurisdiction. All right. Well, and why not? Why isn't it? Because it wasn't specifically pled. It was not pled with specificity. But also because even under the complaint as pled, even under the facts and circumstances that plaintiff pleads, it cannot give rise to willful and wanton conduct as a matter of law. And courts do determine that cases can be dismissed as a matter of law. Counsel, you're giving us general assertions here. You're saying it wasn't specific enough. It's not enough as a matter of law. Let's do a little more work with what actually is in the complaint. What's been alleged and why isn't it sufficient? Sure. I'm happy to go there. Here's what the plaintiff says in the complaint. And it's very sparse as to Trooper Evans. So there's not a lot, actually, with respect to Trooper Evans. Here's how the plaintiff describes the conduct. It says at paragraph 18 of the complaint that Trooper Evans, quote, wrongly and without probable cause, assumed that plaintiff was intoxicated and that Trooper Evans arrested plaintiff for DUI without offering him any medical treatment or assistance whatsoever. At best, that's a negligent standard. But you're skipping. You're skipping things on a monthly basis. Well, Your Honor, we contend that is not conduct. Trooper Evans observed Mr. Schmitz slurring, was having a hard time forming words and standing up. He was standing up. He was talking to some extent, but was having a hard time sort of getting through basic questions. This was an indication to Trooper Evans that Mr. Schmitz was intoxicated. Now, we know, of course, based on toxicology reports that came in but he had no way of knowing that night that Mr. Schmitz was intoxicated or that Mr. Schmitz had a medical condition. You're arguing that. You're making your own complaint here. What he knew was it wasn't that clear to him that we had a DUI drug because he called his sergeant and said, what do I do with this? That's right. That's right. And that is indiction of thoroughness, of careful assessment, not evidence of reckless conduct. He took his time. He spent about an hour with Mr. Schmitz, asking him questions, trying to figure out what was going on. He called his supervisor, a drug recognition expert, trying to understand what was happening. And ultimately, what he concluded was that Mr. Schmitz was intoxicated. Now, it turned out that he was wrong about that. But making the wrong call is not reckless conduct. All of the conduct, everything that he did that night, suggested that he was thorough, which again is how plaintiff described his conduct, that he was... Counselor, could I just ask you, do you agree that someone under the influence of alcohol or drugs could also be in need of medical attention? You seem to be saying if, oh, it's just intoxicated. But sometimes when people are very intoxicated, they need some medical help. Or maybe under some drug influence, they still need medical help. Are you saying that they never need medical help if they're intoxicated or under drugs? Your Honor, I wouldn't say never because it depends on the facts and circumstances. But in this case, on the circumstances as alleged in this complaint, there was no indication that he needed medical attention. He wasn't bleeding. He was standing up. He was still forming words. He was still following basic commands, not perfectly. Obviously, he did think that he was under the influence, but there wasn't anything to indicate that he needed medical attention. He never stated, I have a medical condition, I need medicine, I need help. He never made those types of statements. And so I won't say never, but under these circumstances, there was nothing to indicate that he needed medical attention. And all signs pointed to, he must be under the influence of alcohol. What's your best definition of willful or wanton? Justice Ide gives a good definition and definition that courts rely on over and over again in the estate of black. And what she says is that willful and wanton conduct is defined as conduct that is not only negligent, but exhibits a conscious disregard for the safety of others. And when she's describing that, when she's defining that, she incorporates definitions and concepts that also incorporate notions of recklessness. And she notes, sometimes they even imply elements of evil. It's a very high standard, and it is much more than negligence, which is really all that plaintiff pleads here. Is it a subjective standard? Your Honor, it is an objective standard, but informed by the facts and circumstances of the case. And so here in this particular case, objectively, Officer or Trooper Evans was thoughtful, careful, spent enormous amount of time for an arrest to assess what was going on. And under the facts and circumstances of this particular case could not have been willful and wanton as a matter of law. Well, going back to it does talk about conscious disregard for the safety of others, correct? That's right. That's right. What does that mean, conscious disregard? That indicates that it is important that Trooper Evans knew in this particular case, and honing in on the particular facts here, that Trooper Evans knew that there was some medical condition that needed medical attention. He didn't know. So the following morning, when the wife comes to pick him up, what do they tell her? The following morning, the wife didn't even know that his condition was related to his medical condition. She didn't know that the symptoms were associated that. They thought, the wife and the son thought that a stroke might have occurred. They didn't realize that this medical condition was at issue until days later, when blood tests came back and showed elevated levels of ammonia in his system. So not even his own. Thank you for that information. But my question is, when they came to pick her up, what did the State Patrol, specifically which one, what did they tell her? Well, when they picked him up, State Trooper Evans was out of the picture, Your Honor. So I'm not sure if you're asking about mental impressions that Trooper Evans might have had days later, or... What I'm asking you is, what was the wife told? Well, she was told to take him to the hospital, right? Immediately. Thank you, Judge Phillips, for answering my question. I wish counsel would do an equivalent job. Well, I apologize, Your Honor. I thought you... You don't need to apologize. The point is, the point is, there was awareness that this gentleman needed immediate medical attention. Your Honor, that was hours after Trooper Evans dropped him off. So, and I apologize. I understand, but there is... Do we know what happened in the interim with respect to Trooper Evans? Did he just leave him there and then leave? Or what do we know about from the pleadings? Trooper Evans had him take a blood test and then he transferred custody to the county. The case against the county is proceeding. To the extent that the prolonged symptoms indicated to the county, to the jail officers, that something was going on and they needed to get a medical attention, that rests at the feet of the county. Not Trooper Evans, who spent an hour with him, transferred custody, submitted the lab test, and then was off of his shift. By the time the wife and son came to pick him up the exchange with Mr. Schmitz was limited to that hour of arrest. Well, I think that may be helpful to your client's case. It'd be a good idea for you to do. It's okay to answer the court's questions directly and then put whatever explanation you wish on them. But just as a practice tip, when you're asked a question, it's a good idea to answer it. I'm sorry, Your Honor. I was not trying to evade your question. I was focused on Trooper Evans' conduct and I thought you were suggesting that somehow Trooper Evans said something to them that day. He was not involved the next morning. Thank you. That helps you. I see I'm out of time, so unless there are any other questions, I ask that this court dismiss the case against the Colorado State Patrol and against Trooper Evans. Thank you very much. Counsel, we're ready to hear from you as well. Good morning, Your Honors. May it please the court, I'm Janice Orr, and it is indeed a privilege to be before you this morning on behalf of Donald William Schmitz. Why don't we start right where we left off, Counsel? Are there gaps in the pleadings that leave substantial question about whether your client had anything other to do with this arrest and take him into custody? Counsel tells us that that's the situation and that there's really no connection in the complaint here to her client, either institutionally or individually. There is a connection, as he never would have been in the jail in the first place had he not been arrested, and I would submit that it's very unusual for an officer to take over an hour with an individual if they think he's intoxicated and driving. The trooper, from my understanding, we have not obviously had discovery as yet, was with him for some period of time in the jail, and I don't know what period of time that is. Thank you. Did you get the dash cam video after you had already filed the complaint? No, I had the dash cam video. Why is that not in the complaint? There's important information on there that they're on this case. There is, Your Honor, and I perhaps should have included it. However, I did reference it in the complaint itself. There are things that occurred during the course of the arrest on the dash cam, which is quite extensive, and I did reference things that were said by Trooper Evans and the fact that he contacted his superiors and that he said that he didn't think he had cause. Counsel, what are your strongest facts appearing in the complaint to show willful or wanton conduct? The fact that he knew that he, the trooper knew that he could smell no alcohol, that he had, the officer or the Mr. Schmitz had told him that he hadn't taken his medications. He was making no coherent sense. He closed the truck door on his arm. He couldn't get him to get out of the truck as an initial matter, so he knew that there was something really wrong, and he did nothing about it. Well, you mentioned that he spent an hour with him. I'm just wondering what direction that cuts. The fact that he spent that much time, doesn't that show that he was not willful or wanton? He was, the willful and wantonness, I believe, comes in as far as the fact that he did nothing to get him any medical care, nor did he say to, that we know that, did he say to the jail when he took him there that he needed any medical attention, or we don't know at this time what he told the sheriff's office insofar as his condition was concerned. What would the rule be? Is it that if a trooper encounters a driver who has wrecked a car and is not making sense, that you have to take him to the hospital? Well, one would think that it would behoove someone to get him at least some kind of medical attention. If he wasn't going to take him to a hospital, I think that would have been the proper thing to do. But short of that, he could have sought medical care for him at the jail. So negligence. Chittadonna didn't. Except that he knew. Well, counsel, it seems to me you're visiting your complaint, that you have a lot of allegations which collectively may rise to reckless conduct on someone's part. But we're here only to examine the allegations insofar as they relate to this specific and particular state patrolman and the state patrol collectively. And as I understand your complaint, the gentleman, your client, was taken to the jail. And it is as best as I can tell, while he is in custody, that almost all of your allegations relate to what may rise to reckless conduct, willful, deliberate ignorance of this gentleman's needs. But your burden before us is a little bit more aggressive than that. You have to prove that it was this officer who knew, or during the course of the period in custody, knew that medical attention was necessary and wasn't rendered. Otherwise, you're limited to the necessity of medical attention immediately at the point of arrest. And that's not the way I hear you arguing the case. But maybe I'm wrong. So disabuse me if I am. I don't want to say you're wrong. Oh, that's quite all right. You've had worse things said about the three of us. Over the space of an hour, there just is no way that he did not know that he should have done something to get that man medical care. He knew that. And he told his supervisor that there was a problem. And he smelled no alcohol. And whether he had been on drugs as was raised by the court, that doesn't mean he didn't need medical care. So it turns out he was not, but that he still needed medical care. There was something desperately wrong. And the trooper knew that. The trooper relayed that to the sergeant, right? Yes. The trooper did not hide information. Instead, the trooper sought counsel. What should I do here? He did. And the sergeant said, arrest for DUI drugs. How does that bear on Wealth 101? I think that bears directly on it because not only... And the sergeant said, arrest. It certainly is culpability on behalf of the supervisor. Because he wasn't even there, he couldn't witness it. But the trooper did not say a great deal. He told him that he didn't think he had cause. He said, I don't think I've got it. But he then just followed orders. While it's okay to follow orders, it's not if you're putting someone's life in jeopardy. What should they have done with him then? They should have gotten him to a hospital. Yes. So I have a question of how we're supposed to read your complaint. When it's a 12B6 motion, courts draw reasonable inferences in favor of the non-moving party, meaning you. But this is a 12B1 motion. Are we supposed to draw reasonable inferences in favor of Mr. Schmitz? Or is that a different test? Or is that a different approach on 12B1? I think it should be in favor of Mr. Schmitz. Well, I'm not asking for shoulds. I was kind of hoping that we could get some law on the issue. Have you researched that question? And can you help us out on that? We can do it too. I just was wondering if you had. I'm sorry, Your Honor. I don't have anything directly in front of me on that. However, I would note that I just don't think there's jurisdiction here in any event under Johnson. And that's been completely ignored by the state patrol. And I think that given the fact that the judge below gave ample reasons for his decision, I think that based on Schmitz and the estate of and needs to defer to the findings of the district court. Okay. So you've pivoted over to the appellate jurisdiction issue, as I just understood it. As long as we're pivoting, do you contest that the Colorado State patrol is immune under the CGIA or the 11th Amendment at this point? My understanding is that it's not 11th Amendment immunity, but that I understand the argument about the state patrol as the entity. However, that is beyond the scope of the notice of appeal. Well, let's put that aside for a second. Is the state patrol immune, if we can get past your argument about the notice of appeal? In other words, do you agree with your opposing counsel on that question? Do I agree? I'm sorry, was that? Yes, actually. There is a question of whether or not there is any direct liability, but I do believe that the supervisor and the trooper are both liable. Well, I'm just asking about the entity, the Colorado State Patrol. The entity itself is covered under the statute. So they shouldn't be in the case anymore? Is that what you're saying? Well, I hate to say that. I think that is, in fact, correct. Thank you. I would note, though, that on the notice of appeal, my argument on that, the state has only said, it cited to Smith v. Berry, which was about a pro se complainant, claimant rather, and they found that there was a functional equivalent of a notice of appeal. And in Denver and Rio Grande Western Railroad Company, the question was whether the order was under review was attached. The fact that it wasn't named properly was not fatal. However, there's nothing under CUNICO or Averitt that would say that you can go beyond the notice of appeal. And the notice of appeal clearly says that they are just going to be arguing internal inconsistencies within this district court's order. And I do think that Johnson controls here. And this, if I'm, if I may just briefly, the the state's argument concerning the lower court's order just ignores the fact that he said on numerous occasions that he was not reaching the constitutional question because he couldn't find that the clearly established prong was met. And he says in his, in the footnote on page 11, that he says that Trooper Evans might have been deliberately indifferent, but he wasn't reaching that question. So there is no internal inconsistencies within the district court's order. And the tests are obviously vastly different. If I could, I would just like to say that the state patrol has just ignored binding precedent in the case. And this is a factual determination and the estate of Ceballos and Johnson should control. There's also beyond the jurisdiction of the court because this is beyond the scope of the notice of appeal. And if there, if the court is going to look at the merits of the case, the DeNovo review is limited to taking the factual determinations by the court, district court as true, even if your review would show that to the contrary. Thank you, counsel. We appreciate your argument. Was there any time remaining, Mr. Jerome, for the state? No, judge, they're completely out of time. Thank you kindly. The case is submitted. Counsel are excused.